42495.   CARNES v. THE STATE.

ARGUED JANUARY 5, 1967—DECIDED FEBRUARY 24, 1967— REHEARING DENIED MARCH 14, 1967—

Tisinger & Tisinger, David H. Tisinger, for appellant.

Wright Lipford, Solicitor General, for appellee.

BELL, Presiding Judge. ■ Error is enumerated on the failure of the trial judge to grant the defendant's oral motion for a continuance of the trial. The substance of the motion was that counsel had not had sufficient time to investigate and prepare the defense. No evidence, only argument of counsel, was offered at the hearing. Thus to a large degree the motion amounted to nothing more than contentions of counsel based on unsupported suppositions and conclusions. To that extent the motion is defective. "The bare statement in the motion to continue, that appointed counsel had not had sufficient time to investigate and prepare the defense, was a mere conclusion. Questions of this nature must of necessity be entrusted to the discretion of the trial judge." *Smith v. State*, 198 Ga. 849, 852-853 (33 SE2d 338).

The record does reveal that the time of counsel's preparation for trial was short. Mere shortness of time, however, does not ipso facto show a denial of the rights of an accused. Something more is required. "An examination of the decisions of this court will demonstrate that the broad discretion given to the presiding judge in granting or refusing to continue trials is not to be disturbed unless manifestly abused. . . Whether or not a reversal is to be adjudged because counsel were not allowed sufficient time to prepare the case for trial is to be determined by the particular facts and circumstances of each case." *Cannady v. State*, 190 Ga. 227, 228-229 (9 SE2d 241). It appears from the cases that the courts have considered these "facts and circumstances" to embrace not merely those attendant at the hearing on the motion but also those which the entire record discloses. While no precise rule emerges from the numerous decisions, it is apparent that it is only where the record reveals to the appellate courts facts or circumstances showing as a

matter of law identifiable prejudice to the accused, such as where events have moved so swiftly that constitutional guaranties are overridden, that the reviewing courts are authorized to reverse the trial court's refusal to grant an extension. See *Fair v. Balkcom*, 216 Ga. 721 (119 SE2d 691). The record here contains no evidentiary facts showing identifiable prejudice or recital of official events tending to suggest an abridgment of the defendant's constitutional rights. In that status the trial judge's discretion must not be disturbed. Enumerations 5, 6, 7 and 10 have no merit.

■ The defendant argues that the *time* of his trial and consequently his conviction was improper since the principal thief was known at the *time of trial*. It is, of course, true that "one charged with buying or receiving goods, knowing them to have been stolen, can not be indicted or punished until after the conviction of the principal offender, or until it appears that the principal offender can not be taken so as to be prosecuted and convicted." *Smiley v. State*, 23 Ga. App. 317 (98 SE 125). However, the record here shows no knowledge on the part of anyone as to the identity of the principal. The indictment itself, couched in the language of *Code* § 26-2621, reads in part that the defendant did "buy and receive from some person or persons to the grand jurors unknown so that the said person or persons might be taken and prosecuted to conviction . . . the said property herein described having been feloniously stolen by some party to the grand jurors unknown. . ." In the light of this language the presumption is that the grand jury and the prosecutor properly performed their duty and did not know or discover the identity of the principal. Further, all witnesses interrogated on the point testified that they did not know the identity of the principal. The testimony of the sheriff, based as it was on hearsay revealed to him after the indictment, that an unnamed person *whose whereabouts was unknown* to him, was suspected of being a principal, had no probative value and did not render the time of trial improper. Enumerations 1, 4 and 11 have no merit.

■ Enumerations 3, 8, 14, 16, 17 and 24 all assert error on the court's admitting in evidence certain exhibits offered by the

State listing the merchandise stolen and containing a statement signed by the defendant as follows: "This is to certify that all the merchandise on the invoice was stolen from Alterman Foods and purchased by me." The objection is that the statement, being tantamount to a confession, was allowed in evidence without any showing that it was made voluntarily and without being induced by the slightest hope of benefit or remotest fear of injury. These enumerations have no merit.

In response to questions asked by the solicitor Sheriff Potts testified that at no time had he promised immunity to the defendant nor had he conversed with anyone regarding any contact with the solicitor. Further, Sheriff Potts testified that while he (the sheriff) was in the defendant's store in an adjoining county and while waiting for officials of that county to arrive, he told the defendant he was investigating incidents regarding a truck "stolen in Atlanta" but that he (the sheriff) was "on the wrong side of the river" and "I got nothing to do with it over here. I'm just waiting here." The sheriff then testified that the defendant had said "I wished I'd let that stuff alone. I don't want to get into any trouble. I knew I shouldn't have bought it. I can swear I wished I had left there went to the ball game. I bet I don't ever buy anything else." On cross examination, Sheriff Potts was asked, "Mr. Carnes co-operated throughout this thing and didn't try to hide anything from you?" and testified "I told him [defendant] why I was waiting there. He hesitated, not a long time, but a short time, and then that's the statement he made to me." Another witness, Hunt, a representative of the owner of the stolen property, on cross examination was asked "Did he [defendant] at anytime try to hide any of this thing, or was he fairly open about it, or tell you all about it?" Answering, Hunt testified, "He [defendant] said, 'I want to right a wrong that I did.' He said, 'I don't know why I done it.'" Hunt, on cross examination, questioned if he had led the defendant to believe no prosecution of defendant would occur if defendant assisted "in this thing," testified, "No, sir." Also on cross examination, Hunt testified that the defendant openly and without hesitation helped inventory all "the stuff" in defendant's store and that

defendant himself suggested that it would be better if he [defendant] would "just go ahead and pay for it." Previously, on direct examination the witness Hunt had identified the merchandise listed in the exhibits as stolen property and testified that he (Hunt) witnessed the defendant's signature to the statement.

Significantly, all of the foregoing testimony either was admitted without objection or was adduced on cross examination. Of importance is the fact that the circumstances surrounding the making of these oral statements by the defendant as well as his signing of the written one, as gleaned from the testimony of Hunt and Sheriff Potts as well as from the unsworn statement of the defendant himself, show that the defendant was not in custody, was in no manner restrained, and was not subjected to official interrogation.

It is thus to be seen not only that a proper foundation was laid for the introduction of the exhibits, but also that substantially the same evidence in the form of oral testimony was admitted without objection, or on cross examination, and for that reason, even if the admission of the exhibits otherwise would have been improper, under the facts of this case, that alone would not require a reversal. *Whippler v. State,* 218 Ga. 198 (126 SE2d 744) ; *Pierce v. State,* 212 Ga. 88 (90 SE2d 417) ; *Cooley v. Bergstrom,* 3 Ga. App. 496 (2) (60 SE 220) ; *Bennett v. George,* 105 Ga. App. 527, 536 (125 SE2d 122).

■ Enumerations 2, 3, 6, 16 and 17 all object to the admission in evidence of the State's exhibit referred to in Division 3 above on the grounds that the defendant was denied counsel and was not informed of his right to remain silent "before he was questioned and asked to sign statements."

It is certainly true that the Supreme Court of the United States in recent decisions has made it clear that it will protect the rights against self-incrimination of citizens taken into custody or otherwise restrained who are suspected or accused of crime. In annunciating its policy, the Supreme Court has set stringent criteria for procedural safeguards to be employed to protect the privilege and has held that these criteria apply equally to state as well as federal law enforcement officials.

See Escobedo v. Illinois, 378 U. S. 478 (84 SC 1758, 12 LE2d 977) ; Miranda v. Arizona, 384 U. S. 436 (86 SC 1602, 16 LE2d 694).

The prolix opinions in Escobedo and Miranda deal primarily with in-custody interrogation although undoubtedly their holdings apply to the questioning of a suspect at any place after an investigation has become accusatory. The holdings, however, are limited to *state action* and do not attempt to proscribe the efforts of private citizens to enforce their private property rights by private investigation or interrogation. While private investigation may be so conjunct with that of government as to be inseparable, whether that is so or not must depend on the facts of each case.

Here the record shows only that the invoices listing the stolen merchandise and containing the statement signed by the defendant were prepared by the representative of the owner of the property. These representatives were not government officials. The invoices and the statement were identified only by Hunt, a representative of the owner. Only Hunt testified as to witnessing the signing of the statement by the defendant. The record does not show that the sheriff or any other government agent participated in either the preparation or the signing of the statement. Further, at the time of the signing, the record discloses that the defendant was not in custody, was not restrained, and was not under compulsion to affix his signature. In that status, this statement, an incriminating one whether amounting to a confession or not, was admissible even under the holdings of Escobedo and Miranda.

In the Miranda case, 384 U. S. 436, 478, supra, these statements are made: "Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. . . Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today."

■ Enumerations 21, 22 and 23 relate to asserted errors in the court's charge to the jury. The record, however, makes it clear that none of these objections was raised in the trial

court in the manner demanded by the amendment of 1966 (Sec. 6, Ga. L. 1966, pp. 493-501) to the Appellate Practice Act of 1965 (Ga. L. 1965, p. 18). See *Georgia Power Co. v. Maddox*, 113 Ga. App. 642 (1, 2) (149 SE2d 393). These enumerations present nothing for review.

Until amended by the Act of 1966, Sec. 17 of the Appellate Practice Act of 1965 did not apply to instructions of the court in criminal cases. The amendment became effective on March 15, 1966. This case was tried on March 22, 1966. All persons, of course, are presumed to know the law. However, in view of the closeness of the effective date of the amendment to that of trial, the possibility exists that neither the court nor counsel may have been aware of the change in the law. Because of that possibility, this court has exercised the prerogative granted it by Subsection (c) of Sec. 17 of the Appellate Practice Act of 1965 (*Code Ann.* § 70-207 (c)) and reviewed the charge of the court and concluded that it contains no substantial error harmful to defendant as a matter of law.

■ Enumerations 19 and 20 object to the failure of the trial judge to give in his instructions to the jury written requests of the defendant in the language requested. *Code* § 70-207 as amended (Acts 1853-4, p. 46; 1878-9, p. 150; 1937, p. 592) was specifically repealed by the Appellate Practice Act of 1965 (Ga. L. 1965, pp. 18, 39) and replaced by Sec. 17, Acts 1965, p. 18 as amended by the Act of 1966, pp. 493-498. See *Code Ann.* § 70-207. Thus, on this point, cases such as *Vaughan v. Vaughan*, 212 Ga. 485, 486 (1) (93 SE2d 743), based as they were strictly on the language of the statute repealed, are no longer expressive of the law. The result is the return of the law to that stated by Justice Nisbet in *Long v. State*, 12 Ga. 293, 323, as follows: "We hold, that the court is not bound . . . to instruct in the language of a request, or in immediate response to it, if in substance at any time the instruction desired is given."

We have examined the instructions of the trial judge in toto and in minutia with relation to the defendant's requests. From this it is quite apparent that the contents of requests numbered 3 and 4 were amply covered by the judge's instructions.

■ Enumerations 13 and 15 object to the admission in evidence of photographs of a truck and of oral testimony regarding it.

"From early times the Georgia Supreme Court has followed a liberal policy toward the allowance of photographic evidence." *Cagle Poultry &c. Co. v. Busick,* 110 Ga. App. 551, 552 (a) (139 SE2d 461). The photographs here were properly identified by preliminary proof as being an accurate representation of the truck which hauled the stolen goods in question and thus were material to the issues of the case. They were properly admitted in evidence. *Johnson v. State,* 158 Ga. 192 (2) (123 SE 120); *Bryan v. State,* 206 Ga. 73 (2) (55 SE2d 574); *Hill v. State,* 201 Ga. 300 (6) (39 SE2d 675).

The oral testimony objected to was germane to the burden required of the State in proving that the merchandise hauled in the truck was stolen, in properly identifying the stolen property, and in showing that the stolen property was in the possession of the defendant.

The evidence in the case authorized the verdict.

*Judgment affirmed. Jordan and Pannell, JJ., concur.*